**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **KENNETH HOUCK, # 06743-015,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-1268-JPG** |
| | ) | |
| **USA,** | ) | |
| **FEDERAL BUREAU of PRISONS,** | ) | |
| **MAUREEN BAIRD,** | ) | |
| **J.M. POWERS,** | ) | |
| **MR. SLOOP,** | ) | |
| **MR. MASH,** | ) | |
| **MS. G. CREWS,** | ) | |
| **MR. LEPE,** | ) | |
| **MR. MAY,** | ) | |
| **and JOHN DOES (Lieutenants 1, 2, & 3),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, an inmate in the United States Penitentiary in Marion, brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He also asserts a claim under the Federal Tort Claims Act ("FTCA"). This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

When Plaintiff arrived at Marion in August 2015, he was housed in cell #222 in X-Unit with 2 cellmates, Fletcher and Thomas. Plaintiff occupied a lower bunk pursuant to his medical permit. (Doc. 1, p. 3). On October 29, 2015, Plaintiff voluntarily enrolled in the Residential

Drug and Alcohol Program ("RDAP") and moved to a different housing area (Y-Unit). However, he decided on November 4, 2015, to leave the RDAP, which meant that he would move back to his original housing unit.

Plaintiff was placed in cell #208 back in X-Unit, with 2 new cellmates who were not convicted sex offenders. These inmates, known as "haters," refused to allow sex offenders like Plaintiff to share a cell with them. Plaintiff made an agreement with these cellmates that he would find a new cell the next day, and they agreed to leave him alone for that one night. Plaintiff had been assaulted in 2011 by a group of "haters," leaving him with permanent injuries. He wanted to avoid a repeat occurrence.

The following day, Fletcher and Thomas (the former cellmates) asked Mr. May (the counselor) not to return Plaintiff to their cell (#222). After Plaintiff's departure, Fletcher and Thomas had switched their bunks so that the lower bunk was no longer available. Nonetheless, May assigned Plaintiff back to #222 on the lower bunk. Plaintiff discovered this when he returned to the unit from work at around 8:10pm; he was surprised because he had never spoken to the counselor about a move. Fletcher refused to yield the lower bunk back to Plaintiff, and both cellmates were willing to fight Plaintiff rather than let him reclaim the lower bunk. (Doc. 1, p. 4). Given this situation, Plaintiff returned to cell #208 with the "hater" cellmates for the night.

Thomas and Fletcher threatened violence against Plaintiff, and refused to allow him back into the cell. Plaintiff then sought alternatives to resolve the housing conflict. Several times, he asked the Housing Officer (Woolridge, who is not named as a Defendant) to radio a lieutenant who could address the problem because his safety had been threatened. (Doc. 1, p. 4). However, Woolridge refused to contact the lieutenant, despite hearing Plaintiff's complaint that he was being threatened by the cellmates. (Doc. 1, p. 5). Plaintiff approached staff members from

another housing unit, as well as his Unit Team, seeking help to move out of cell #222. Plaintiff claims that surveillance video would show him "approaching the CO[1] several times" seeking help with a cell reassignment. (Doc. 1, p. 6). However, no prison official would take any steps to move him to a different cell. Plaintiff also claims that cellmate Thomas told a lieutenant[2] that he "would do whatever it takes but the [Plaintiff] was NOT moving back into that cell." (Doc. 1, p. 7). Despite this warning, nothing was done to prevent Thomas from carrying out his threat.

The second night after Plaintiff was returned to X-Unit, inmate Thomas pushed Plaintiff into a railing. (Doc. 1, p. 6). Based on these facts, Plaintiff brings an Eighth Amendment claim against several Defendants who allegedly failed to protect him from attack. (Doc. 1, p. 9).

After the assault by Thomas, Plaintiff was charged with a disciplinary infraction for fighting. He was found guilty based largely upon video evidence, which he was not allowed to preview.

On approximately December 4, 2016, Plaintiff made a written request to prison officials to preserve the video evidence relating to the disciplinary matter. (Doc. 1, p. 6). He sent the request to Lepe, and then to the warden when he got no response. Over a month later, Plaintiff received a response from Sloop, who said that "there was never any video to either save or review." *Id.*

Plaintiff asserts that Bureau of Prisons policy (PS § 5270.09) directs the BOP to "make every effort to review and preserve the evidence" when an inmate requests exculpatory video or audio recordings. (Doc. 1, p. 7). This policy was violated in his case, because he requested video surveillance from specific times on November 4 and 5, 2015, which would show Plaintiff

---

[1] The Court shall designate this unknown correctional officer as "John Doe #1." Plaintiff included John Does 1, 2, and 3 as Defendants in this action, but did not indicate which of these unknown individuals was involved in the several specific encounters he describes in the Complaint.

[2] This lieutenant who heard Thomas make the threat against Plaintiff shall be designated as "Lt. John Doe #2."

going to see his Unit Team, attempting to enter another unit, and speaking to Woolridge several times. The tape would also show inmates Thomas and Fletcher leaving cell #222 and speaking with a lieutenant[3] on duty. Plaintiff filed a tort claim seeking compensation for this spoliation of evidence, and he reasserts that claim here, invoking the FTCA. (Doc. 1, pp. 8-9).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment claim for failure to protect Plaintiff from assault by his cellmate, after Plaintiff reported threats and requested to be moved to a different cell;

> **Count 2:** Claim for damages under the Federal Tort Claims Act, based on Marion officials' failure to preserve exculpatory videotape evidence that would have assisted Plaintiff in defending himself against disciplinary charges.

For the reasons explained below, Count 1 may proceed against two John Doe Defendants only, and Plaintiff must identify these individuals by name before they may be served. Count 2 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 1 – Failure to Protect

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006).

---

[3] This lieutenant shall be designated as "Lt. John Doe #3."

However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id*.; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Here, Plaintiff describes a situation that posed a specific and immediate threat to his safety – if he remained in cell #208 with the "haters," he risked assault, and former cellmates Thomas and Fletcher announced their intent to harm Plaintiff if he returned to cell #222. Plaintiff reported these threats to certain individual officers including John Doe #1, and Thomas verbalized his threat directly to Lt. John Doe #2.

Notably, 42 U.S.C. § 1983 and its federal equivalent (an action brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)) create a cause of action based on personal liability and predicated upon fault. Thus, "to be liable under § 1983 [or in a *Bivens* action], the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). *See also Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005)

(a *Bivens* action is the federal equivalent of a § 1983 civil rights action); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (collecting cases). In other words, in order to incur liability, an individual defendant must have been personally involved in the misconduct. There is no supervisory liability in a civil rights action, because the doctrine of *respondeat superior* does not apply in this context. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

In this action, for Plaintiff to state a failure to protect claim against a Defendant, he must show that the individual Defendant was informed of the specific threat to Plaintiff's safety from the cellmate(s), yet failed to take steps to mitigate the harm he faced. Taking each Defendant in turn, Plaintiff's statement of claim shows that he personally approached John Doe #1 in his efforts to seek a cell change, but no help was forthcoming from that person. Additionally, Lt. John Doe #2 heard Thomas threaten to harm Plaintiff, yet took no action. If Plaintiff is able to identify either of these individuals by name, the claim in **Count 1** may proceed against them. However, service of process cannot be issued to an unknown (John Doe) party.

As to the named Defendants, Plaintiff states that other prisoners including former cellmates Fletcher and Thomas approached counselor May regarding the cell assignment problem. However, Plaintiff never states that he himself spoke to May. Whether or not any threat to Plaintiff's safety was communicated to May by the other prisoners is entirely speculative.[4] The Complaint contains no facts showing that May was aware of a threat of harm to Plaintiff. Absent any allegations to demonstrate that May knew about the cellmates' threats, the Complaint fails to state a claim against May for failing to protect Plaintiff.

---

[4] Similarly, Plaintiff states in the "Spoliation of Evidence" section of the Complaint that on November 5, 2015, Thomas and Fletcher approached a lieutenant on duty (Lt. John Doe #3) and had a conversation with him. (Doc. 1, p. 7). However, nothing is known about the content of that conversation, thus these facts do not support a failure-to-protect claim against Lt. John Doe #3.

Plaintiff mentions Captain Lepe and the warden, but states only that he contacted them after the assault to request them to preserve video evidence. He does not claim to have informed either Lepe or the warden about the threats made to him before the assault by Thomas. Accordingly, the Complaint fails to state a failure-to-protect claim against Lepe or the warden, and they shall be dismissed from this claim.

Plaintiff does not make any allegations against Baird, Powers, Sloop, Mash, or Crews in the factual statement supporting his failure-to-protect claim, and does not assert that he contacted any of those individuals to inform them of the threats to his safety. Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). As noted above, there is no supervisory liability against a warden or assistant warden such as Baird, Powers, or Sloop. The Complaint thus fails to state a claim upon which relief may be granted against these individuals for failure to protect Plaintiff, and they shall be dismissed from **Count 1**.

Plaintiff does state several times that he told "staff" that he needed a cell change, and was willing to move to another unit if necessary, but that "staff" did nothing to assist him. (Doc. 1, pp. 5-7). However, he never identifies any of these individual "staff" members by name in the body of the complaint, nor does he describe what he told them about the reason for seeking a cell reassignment. In order to state a claim against an individual prison official, Plaintiff must identify each individual by name (or designate the person as a John/Jane Doe with descriptive information such as job title, shift worked, or location, to assist in his/her eventual

identification), and must describe what each named Defendant did (or failed to do), that violated his constitutional rights.

Plaintiff names the Federal Bureau of Prisons as a Defendant in the action. He states that he gave "the BOP" notice of the threat, yet "the BOP" took no measures to protect him. (Doc. 1, p. 7). This also does not suffice to state a claim. The Federal Bureau of Prisons is a governmental unit, not an individual. Only individual persons may be sued in a civil rights action brought pursuant to *Bivens*. *See FDIC v. Meyer*, 510 U.S. 471, 475; 483-86 (1994) (sovereign immunity shields the federal government from suit absent a waiver; a *Bivens* action permits suit only against an individual who is an agent of the federal government). Therefore, the Federal Bureau of Prisons shall be dismissed with prejudice as a Defendant in this action.

Aside from the named Defendants reviewed above, Plaintiff states that he made several direct requests for help to CO Woolridge. Plaintiff personally informed Woolridge that he had been threatened by his cellmates. However, Plaintiff did not include Woolridge as a Defendant in this action. When parties are not listed in the caption of the case, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* Fed. R. Civ. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). If Plaintiff intended to bring a claim against Woolridge, he must submit an amended complaint.

To summarize, the factual allegations in the Complaint support a claim for failure to protect only against two of the Unknown Defendants – John Doe #1 (the CO from whom Plaintiff sought help to get a cell change), and Lt. John Doe #2 (the officer who heard Thomas threaten to harm Plaintiff). As noted earlier, service of process cannot be made on unknown

parties. That being said, the Court shall facilitate the progress of this action by ordering service on Warden Baird, in her official capacity only, so that she may respond to Plaintiff's reasonable discovery requests regarding the identity of the John Doe parties. *See Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555-56 (7th Cir. 1996) (collecting cases) (court may employ various means to facilitate *pro se* prisoner's discovery of identities of parties who may have violated his rights). Plaintiff is reminded, however, that he has failed to state a claim against Baird in her individual capacity. Based on the operative Complaint, Plaintiff may proceed with his claims in **Count 1** for failure to protect him from assault *only* against John Doe #1 and Lt. John Doe #2 at this time.

### Dismissal of Count 2 – Federal Tort Claim – Spoliation of Evidence

For this claim, Plaintiff asserts that prison staff intentionally failed to preserve the surveillance videotapes which he believes would have contained exculpatory evidence relating to his prison disciplinary charge for fighting. Plaintiff was found guilty of that infraction, when in fact (he asserts) he was the victim of an assault by Thomas. As a result of the guilty finding, Plaintiff was punished with "sanctions and suspended Disciplinary SHU time." (Doc. 1, p. 8). Plaintiff does not further elaborate on the nature of his punishment, nor does he include a copy of the disciplinary report with his pleading.

The video evidence that Plaintiff sought to have preserved consisted of recordings on November 4, 2015, which would have shown Plaintiff entering the Unit Management North offices to see his Unit Team, and shown him in the hallway attempting to enter L-Unit, but denied access by an officer. Further, he claims that a recording from November 5, 2015, would have shown inmates Thomas and Fletcher leaving cell #222 and having a conversation with the lieutenant on duty (Lt. John Doe #3). Another tape from the evening of November 5 would

show Plaintiff speaking with CO Woolridge 3 times.  (Doc. 1, pp. 7-8).  An assistant warden told Plaintiff that no video evidence was available from that time frame.  However, Plaintiff claims that video evidence of the physical "fight" involving him and Thomas was used to find him guilty of the fighting charge.  From Plaintiff's account, it appears that the assault/"fight" occurred on November 6, 2015, the day after Plaintiff sought assistance from Woolridge regarding the cell assignment; therefore the lost tapes would not have recorded the actual "fight" incident.  Plaintiff seeks monetary damages under the FTCA for the spoliation of the video evidence.

> The FTCA permits an individual to bring suit in federal court against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  28 U.S.C. § 1346(b)(1).  Pursuant to this provision, federal inmates may bring suit for injuries they sustain while incarcerated as a consequence of the negligence of prison officials.  *United States v. Muniz,* 374 U.S. 150, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963).  However, the plaintiff may not bring such a suit unless he has first presented his claim to the appropriate federal agency and that agency has denied the claim.  28 U.S.C. § 2675(a).

*Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003).  Thus, if Plaintiff is to maintain a Federal Tort Claim, his Complaint must present a claim that is recognized under the law of the State of Illinois.  He must also demonstrate exhaustion of his administrative FTCA claim.

Illinois does not recognize a tort of "intentional spoliation of evidence," nor does it recognize an independent tort for negligent spoliation.  Rather, negligent spoliation of evidence is a type of ordinary negligence.  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509-10 (7th Cir. 2007) (citing *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 269-70 (Ill. 1995); *Cangemi v. Advocate S. Suburban Hosp.*, 845 N.E.2d 792, 815 (Ill. App. 2006) ("Plaintiffs cite to no case

that specifically recognizes intentional spoliation of evidence as a tort in Illinois. Neither have we found such an Illinois case.").

In order to prevail on a negligence claim for spoliation of evidence, a plaintiff must show that:

> (1) the defendant owed the plaintiff a duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (4) as a result, the plaintiff suffered actual damages.

*Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 748-49 (N.D. Ill. 2016) (quoting *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012). The Seventh Circuit in *Borsellino* observed, "A claim of spoliation of evidence is connected to the merits of the underlying suit. [citation omitted]. If a plaintiff cannot prevail in the underlying suit even with the allegedly lost or destroyed evidence, then a claim for spoliation will fail because the plaintiff cannot prove damages." *Borsellino*, 477 F.3d at 510.

As to the first two elements of a spoliation claim, the Court will presume for purposes of this analysis that the government had a duty to preserve the videotapes but failed to do so. The third and fourth factors, however, are problematic for Plaintiff. In this action, he does not present an affirmative "underlying lawsuit" in which he would be entitled to recover damages if the lost videotape evidence were available to him. Instead, he claims that the lost evidence would have helped him to present a defense to the disciplinary charge for fighting, and might have enabled him to avoid the sanctions that were imposed on him if that defense were successful. Plaintiff's spoliation claim may be doomed merely because he wanted to use the lost evidence to mount a defense in the disciplinary matter, rather than as proof in a lawsuit where he could be entitled to damages. *See Hartmann Realtors v. Biffar*, 13 N.E.3d 350, 357-58 (Ill. App.

2014) (spoliation counterclaim was dismissed because small claims defendant alleged that the spoliation hindered her defense, but failed to allege that she had a reasonable probability of success in an underlying lawsuit if the destroyed evidence had been available; further, defendant could not show that the spoliation caused her to lose a claim, because she had never filed an underlying suit).  Given the early stage of the present case, Plaintiff might attempt to bring an affirmative claim for damages based on the disciplinary sanctions he believes were wrongly imposed on him, thus avoiding the pitfall faced by the defendant in *Hartmann Realtors*.  However, a prisoner who seeks to recover damages for wrongful discipline faces a very narrow path to success.

First, an inmate may have a constitutional claim for deprivation of a liberty interest without due process *only* if he was placed in disciplinary segregation for a significant period of time, under conditions of confinement that impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small").  *See also Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (courts must consider both the duration of the confinement in segregation and the conditions in disciplinary segregation, but for short periods of segregation, claim may be dismissed without inquiry into the conditions).  Other disciplinary sanctions that do not entail placement in segregation, such as a demotion in prison classification, or restriction of commissary or visitation privileges, do not implicate a protected liberty interest, and will not support a constitutional claim.  *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).

In addition, there must have been some due process violation in the course of the disciplinary proceeding that led to the imposition of segregation time. Due process requires that an inmate must be given advance written notice of the charge before he is called to the disciplinary hearing, the right to appear before the hearing panel in his defense, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed. *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). Further, the decision to impose discipline must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Here, Plaintiff's claim that the lost videotapes would have aided his defense in the disciplinary matter is essentially a challenge to the sufficiency of the evidence against him. But even if he had been able to use the lost recordings, the videotape of the "fighting" incident itself (which Plaintiff claims was relied upon to find him guilty) would very likely satisfy the minimal "some evidence" standard. *See Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends" . . . a reviewing court need only consider prisoner's exculpatory evidence to the extent that it undermines the reliability of the evidence relied upon to find him guilty). This factor undercuts Plaintiff's potential due process claim.

As to Plaintiff's punishment, he states that it included "suspended Disciplinary SHU time" – which suggests that he never actually spent any time in segregation as a result of being found guilty of fighting. (Doc. 1, p. 8). He does not elaborate on the other sanctions he incurred. As it stands, Plaintiff's factual summary regarding the discipline imposed on him for "fighting" is insufficient to support a claim that he was deprived of a protected liberty interest without due process. Thus, if Plaintiff were to attempt to bring a suit to recover damages for the disciplinary sanctions, the instant Complaint would fail to state a claim upon which relief may be granted. In other words, Plaintiff's potential underlying claim has no merit based on the current pleading.

In the absence of a viable underlying due process claim, it cannot be said that the alleged spoliation of the videotape evidence caused Plaintiff to lose that hypothetical case. Plaintiff's Complaint thus fails to show that the loss of the videotape evidence was the proximate cause of his inability to prove an underlying lawsuit, or that he suffered any damages as a result of the unavailable evidence. Based on the content of Plaintiff's current pleading, he cannot maintain a cognizable negligence claim for spoliation of evidence. Consequently, the Federal Tort Claim in **Count 2** based on this alleged negligence shall be dismissed for failure to state a claim upon which relief may be granted.

The dismissal of Count 2 shall be without prejudice. Therefore, if Plaintiff believes that facts exist to support an underlying claim for deprivation of a liberty interest without due process arising from the disciplinary action, he may attempt to re-plead this claim. If he does so, he shall attach a copy of his letter notifying him of the final administrative denial of his Federal Tort Claim. He shall also note that the only proper defendant in a Federal Tort Claim is the United States of America. *See* 28 U.S.C. § 2679(b); *FDIC v. Meyer*, 510 U.S. 471 (1994). Any amended complaint Plaintiff may submit in this action must comply with Federal Rule of Civil Procedure 15 and this Court's Local Rule 15.1, and shall be subject to review pursuant to § 1915A.

## Pending Motions

Plaintiff's motions seeking recruitment of counsel (Docs. 3 and 5) shall be referred to the United States Magistrate Judge for further consideration.

The motion (Doc. 10) to obligate Bureau of Prisons to provide legal materials for pursuing state law tort claims is **DENIED.** Plaintiff asserts that he is being denied access to the courts because information on the state laws of Illinois and Colorado (where he has another

pending suit) is not available in the prison libraries or education department, nor are books on this subject available through an inter-library loan. However, Plaintiff has made no showing that any meritorious state tort claim has been dismissed or denied on account of his inability to access library materials. As discussed herein under Count 2, Plaintiff's failure to state a viable claim for negligent spoliation of evidence in this case was due to the lack of factual allegations to support his underlying potential claim for deprivation of a protected liberty interest without due process as a result of the prison disciplinary action. Plaintiff may be able to successfully re-plead this claim by presenting supporting facts, if such factual basis exists. Plaintiff already knows the facts of what transpired in the disciplinary proceeding, and does not need access to any library or legal materials to discover the factual basis for his claims.

Plaintiff's motion for extension of time to return his signed consent form to proceed in forma pauperis (Doc. 13) is **DENIED AS MOOT.** The consent form in question was received and docketed by the Clerk on January 10, 2017. (Doc. 12).

Finally, the motions requesting the Court to provide regular updates via docket sheets (Docs. 15 and 16) are **DENIED**. In these identical motions, Plaintiff seeks to have a printed record of the Court's docket sheet pertaining to this case mailed to him periodically. Although Plaintiff's indigent status has been established, fees for photocopies are not among the fees that are waivable pursuant to 28 U.S.C. § 1915. *See Robinson v. Miscellaneous*, No. 09C0148, 2009 WL 1649697, at *4 (E.D. Wis. June 11, 2009); *In re Richard*, 914 F.2d 1526, 1527 (6th Cir. 1990) ("Although the petitioner was granted leave to proceed in the district court as a pauper, that status waives only 'prepayment of fees and costs and security . . . .' 28 U.S.C. § 1915(a). It does not give the litigant a right to have documents copied and returned to him at government expense."). Copies of court documents, including the docket sheet, are available at a cost of

$0.50 per page, which must be prepaid. *See* 28 U.S.C. § 1914(b); § (4) of The Judicial Conference Schedule of Fees. Should Plaintiff wish to order a copy of the Court's docket sheet, the fee shall be $1.50 for 3 pages. The Clerk shall continue to mail newly filed orders to Plaintiff pursuant to the Court's usual procedure.

### Disposition

**COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendant **FEDERAL BUREAU of PRISONS** is **DISMISSED** from this action with prejudice. Defendants **USA, POWERS, SLOOP, MASH, CREWS, LEPE, MAY,** and **LT. JOHN DOE #3** are **DISMISSED** from this action without prejudice.

All claims against Defendant **BAIRD** in her individual capacity are **DISMISSED** without prejudice. Defendant **BAIRD** shall remain in the action at this time only in her **official capacity** as Warden of USP-Marion.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendant **BAIRD** (official capacity only); the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendant **BAIRD** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[5] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1)

---

[5] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Service shall not be made on the Unknown Defendants (John Doe #1 and Lt. John Doe #2) until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motions for recruitment of counsel (Docs. 3 and 5).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 18, 2017**

*s/J. Phil Gilbert*
United States District Judge