IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KENNETH HOUCK<br>    # 06743-015, | )<br>) | |
| Plaintiff, | )<br>) | |
| vs. | ) | Civil No. 16-CV-1268-JPG-SCW |
| | ) | |
| USA, WARDEN TRUE, and<br>OFFICER WOOLRIDGE | )<br>)<br>) | |
| Defendants. | )<br>) | |

### **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendants, the United States of America, Warden True and Officer Woolridge, by and through their attorneys, Donald S. Boyce, United States Attorney for the Southern District of Illinois, and Suzanne M. Garrison, Assistant United States Attorney, move for summary judgment pursuant to Fed.R.Civ.P 56:

### **INTRODUCTION**

Plaintiff is a sex offender serving a term of incarceration at USP-Marion who is due for release on June 23, 2018[1]. Count 1 of the First Amended Complaint pleads a *Bivens*[2] claim alleging that Officer Woolridge failed to protect Plaintiff from a cellmate, in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. (Doc. 38; 39). Count 2 alleges that the United States is liable under the Federal Tort Claims Act for the alleged destruction of video surveillance on a spoliation of evidence theory. (Doc. 38; 39). The Court added Defendant True to this case in his official capacity pending Plaintiff's identification of two John Doe defendants. (Doc. 17; 34). Plaintiff named Officer Woolridge in place of John Doe 2, and the Court dismissed John Doe 1 because Plaintiff never identified him for purpose of service of process. (Doc. 38). It

---

[1] Inmate locator. www.bop.gov. *United States v. Houck*, D. Del. 11-CR-22-01-GMS.
[2] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

would appear proper to dismiss Warden True as there is no longer any Doe defendant to be identified.

At issue is a physical altercation on November 5, 2015, approximately 15 seconds in length and captured on video, between Plaintiff and Inmate Thomas. Plaintiff alleges that he told BOP staff that a physical confrontation with Thomas was imminent but that BOP failed to intervene by transferring Plaintiff to a different cell. As Plaintiff acknowledges in the Amended Complaint, he received an incident report based on the November 5, 2015 altercation and the Disciplinary Hearing Officer (DHO) found that Plaintiff committed the prohibited act of Fighting. The success of Plaintiff's claim is undermined by the adverse prison disciplinary proceeding. Plaintiff cannot bring this action without first having the disciplinary finding overturned, and this action should be dismissed. *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Edwards v. Balisok*, 520 U.S. 641, 646–47, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

## FACTUAL SUMMARY

The attached affidavit of Michele Dunn, Case Management Coordinator, indicates that the documentary evidence submitted herewith as Attachments 2 through 9 and 11 are true and correct copies of documents maintained by BOP in the ordinary course of business. (Attachment 1).

According to an incident report, on Thursday, November 5, 2015, at approximately 8:41 p.m., Inmate Fletcher told Correctional Officer Brandon Woolridge, the X Unit Housing Officer, that his cellmate, Jeffrey Thomas, would not let Plaintiff move into their cell as assigned. (Attachment 2). As Inmate Fletcher exited CO Woolridge's office, he stated, "It's happening now," and Woolridge observed Inmate Thomas and Inmate Fletcher fighting in their cell. *Id.* CO Woolridge notified the control room that there was a fight, and inmates were secured in their cells. *Id.*

2

Captain Lepe reviewed the video surveillance and prepared a memorandum summarizing the fight, which lasted about 15 seconds, together with still shots from the surveillance footage. (Attachment 3). At approximately 8:40:12 p.m., Plaintiff can be seen walking to his assigned cell, number 222. *Id.* At 8:40:14, Plaintiff places property bags in front of cell 222. *Id.* Plaintiff then walks away from the cell at 8:40:19 p.m., and walks back to the cell at 8:40:22 p.m. *Id.* At 8:40:28 p.m., Plaintiff can be seen standing at the doorway of cell 222. *Id.* At 8:41:10 p.m., Plaintiff was either pushed or punched out of the doorway of cell 222. *Id.* At 8:41:14 p.m., Plaintiff entered cell 222 and began to fight Inmate Thomas for about 15 seconds. *Id.* At 8:41:36 p.m., Plaintiff can be seen standing outside of cell 222 for several seconds, in lieu of hurrying away immediately or seeking staff assistance. *Id.* He does not begin descending from the top tier until 8:42:19 p.m. *Id.* Shortly thereafter, staff secured Plaintiff. *Id.*

CO Woolridge's incident report, which he based on his personal observations and his review of the video surveillance, indicates that he saw Inmate Thomas push Plaintiff out of cell 222, and Plaintiff then re-entered the cell and began to strike Thomas about the face and upper torso. (Attachment 2). He next saw Thomas place his left arm around Plaintiff's neck in a headlock. *Id.* While the fight continued, the Control Unit Officer, Henry Rivas, announced over the radio that an inmate fight was on-going in X Unit, and Correctional Officers Alec Ramsay, Michael Williams, Vincent Fields, Casey Murphy, Garret Fozzard, Keith Lampley, Justin Yates, David Vogler, Jason Webb, and Sawyer Gillis, responded to X Unit to assist with the situation. (Attachment 4). Recreation Specialist, Vincent Fields, and others, restrained Thomas in Cell 222, and then escorted him to the Captain's Secretary's Office and later the Lieutenant's Office. *Id.*.

A medical assessment by Physician's Assistant Leslee Brooks revealed "minimal ecchymosis [bruising] below right eye. No other abrasions or contusions noted." (Attachment 5). Plaintiff told PA Brooks that "he pushed me and put me in a headlock and tried to drag me to

3

a cell and started to try and gouge out my eyes.  He started hitting me and I started hitting him back trying to get out of the cell and his headlock." *Id.*  Following this examination, staff escorted Plaintiff to the Special Housing Unit (SHU) with no additional treatment needed.  *Id.*

Inmate Thomas told USP Marion medical staff that "I just got into a little fight, or scuffle really." (Attachment 6).

Approximately a week after Plaintiff's placement in the SHU, he told Captain Lepe that another inmate had assaulted him on December 4, 2015. (Attachment 2).  Plaintiff specifically told Captain Lepe that he did not fight Thomas.  *Id.*  Captain Lepe explained to Plaintiff that he had seen the video and watched him enter the cell where he and Thomas engaged in a fight.  *Id.*  Plaintiff did not comment any further.  *Id.*  In his report, Capt. Christian Lepe noted that he could not confirm from his investigation that Plaintiff requested protective custody from staff prior to the fight. (Attachment 3).

On November 17, 2015, once it was confirmed that the video evidence did not corroborate Plaintiff's claim that he was assaulted, Lt. Keith Lampley issued Houck a Code 201, incident report for Fighting with Another Person.  (Attachment 2).

Because of the severity of the charges, the Unit Discipline Committee (UDC) referred the matter to the DHO on November 10, 2015.  *Id.*   On November 17, 2015, staff provided Plaintiff with written notice of the DHO hearing and his rights at the hearing. (Attachment 2).  Plaintiff declined to have a staff representative appear on his behalf, and did not request any witnesses at the hearing.  *Id*.  On December 1, 2015, following a hearing, DHO Glenna Crews found Plaintiff committed the infraction.  *Id*.

The evidence DHO Crews relied upon included the incident report and investigation, Plaintiff's statement, photos, medical assessments of inmate Thomas and Plaintiff, memos from Lt. Mash, Officer Murphy, and video evidence. (Attachment 7).   The DHO's finding that Plaintiff

had committed the prohibited act of Fighting was based on, among other things, the reporting officer's statement that he saw Plaintiff and Thomas engaged in a physical altercation, the medical assessments, and surveillance video of the incident. *Id.* Therefore the DHO found that, since the incident report supported the charge as written, Plaintiff was guilty of the infraction. *Id.* The DHO's sanctions against Plaintiff included disallowance of 27 days of good conduct time, 30 days disciplinary segregation suspended for 90 days, 90 days commissary restriction, and 90 days of telephone restriction. *Id.*

Plaintiff appealed his discipline in Administrative Remedy No. 847014, however, the BOP's North Central Regional Office denied the appeal. (Attachment 8). Plaintiff then appealed the decision to the Central Office for Inmate Appeals. (*Id.*). The Central Office denied Plaintiff's appeal on January 10, 2017. (*Id.*, Attachment 9). A nationwide Pacer search reveals that Plaintiff never challenged the denial of Administrative Remedy No. 8470140-A1 by filing a habeas petition.[3] He filed the instant case on November 21, 2016. (Doc. 1).

Plaintiff alleges that on or about December 4, 2016, approximately one month after the fight, he submitted a request for video evidence but was advised that it did not exist. (Doc. 39, ¶ 55, 66). The affidavit of Daniel Huggins, SIS Technician, explains that surveillance video is destroyed by BOP in the ordinary course of business within 14 to 21 days. (Attachment 10). Here, it is clear that BOP preserved evidence of the fight. (Attachment 3). By the time Plaintiff requested additional video, it would have been destroyed in the ordinary course of business. As for Plaintiff's claim that the video would have shown inmates approaching Lt. Dooley to warn him

---

[3] A court may judicially notice public records available on government websites. *Bova v. U.S. Bank, N.A.,* 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006)(collecting cases).

5

of an impending conflict, Lt. Dooley's memorandum indicates that he was not on duty on November 5, 2015 as alleged by Plaintiff. (Attachment 11).

## THE *BIVENS* ACTION SHOULD BE DISMISSED

A prisoner has a right under the Eighth Amendment to be protected from harm. To state an Eighth Amendment failure to protect claim, a prisoner must allege facts plausibly suggesting that (1) he was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials exhibited deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Deliberate indifference is a conscious disregard of a substantial risk of serious harm. *Id.* at 835.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983[4]. Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *Farmer*, 114 S.Ct. at 1980; see also *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

The Supreme Court has held that a person convicted of a criminal offense may not bring a civil rights action challenging any aspect of the criminal conviction without first using appropriate procedural mechanisms to overturn the criminal proceeding. *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Three years later, the Court extended *Heck's* rationale to disciplinary proceedings in the prison context, holding an inmate may not bring a civil rights action for damages related to an inmate disciplinary proceeding without first challenging

---

[4] Federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. See *Harlow v. Fitzgerald*, 457 U.S. 800, 814–820 & n. 30, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

and overturning, via the appropriate proceedings, the disciplinary hearing in question. *Edwards v. Balisok*, 520 U.S. 641, 646–47, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

The *Heck* rule is analogous to collateral estoppel: an issue determined with finality in a full and fair adjudicative proceeding (and essential to the decision in that proceeding) cannot be reopened in a subsequent case. *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011).

As discussed below, following a hearing, Plaintiff was found guilty of Fighting, and his prison disciplinary proceeding, which has not been overturned, bars this action.

*Heck* prohibits a prisoner in a civil rights suit from challenging a finding in this prison-discipline case that was essential to the decision in that case. Here, Plaintiff is challenging findings in his prison discipline case, which have not been overturned, requiring the dismissal of this suit.

The DHO report states that, "The DHO considered the video evidence which revealed inmate Houck outside of cell 222 in the doorway while inmate Thomas was in the cell. After a discussion between the two, inmate Thomas pushes inmate Houck. Inmate Houck enters the cell with inmate Thomas and begins to strike inmate Thomas. . . . Greater weight supports that this was not assault but rather an unauthorized physical altercation." (Attachment 8, p. 3-4). In paragraph 56 of the Complaint, Plaintiff denies these findings by stating, "Plaintiff was pushed into the railing, where the 'hands-on' contact was committed by inmate Thomas." In other words, Plaintiff's Complaint maintains that Thomas assaulted him, which is a direct challenge to the DHO's essential finding that "this was not an assault."

Additionally, the DHO considered and rejected Plaintiff's defense that he had reported to staff that the conflict with Thomas was imminent but that staff took no action. *Id.* Plaintiff's Complaint contests this finding in paragraphs 71 and 72, where he states that, "Due to the Plaintiff making staff aware of the threats against him. . . . the BOP had been given notice of the violence inmate Thomas declared he would inflict himself. . . . "

7

Plaintiff's claim implies the invalidity of the DHO Report and *Heck* requires dismissal of the Count 1 of the Amended Complaint. *See*, *Franklin v. Johnson*, No. CIV. 12-320-GPM, 2012 WL 1409528, at *2 (S.D. Ill. Apr. 21, 2012)("Were the Court to find that Johnson and Taylor failed to protect Franklin, this necessarily would imply the invalidity of the disciplinary charge for fighting for which Franklin was convicted.")

## THE FTCA ACTION ALLEGING SPOLIATION SHOULD BE DISMISSED

Illinois courts do not recognize spoliation of evidence as an independent cause of action; rather, it is a considered a derivative action that arises out of other causes of action and may be pled under existing negligence principles. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188–19293 (1995); *Babich v. River Oaks Toyota*, 377 Ill. App. 3d 425, 431 (2007). Accordingly, to establish a claim for spoliation of evidence, a plaintiff must allege: (1) the defendant owed the plaintiff a duty to preserve evidence; (2) the defendant breached that duty; (3) the loss or destruction of the evidence proximately caused the plaintiff to be unable to prove his or her underlying claim; and (4) the plaintiff suffered actual damages as a result. *Martin v. Keeley & Sons*, 2012 IL 113270, ¶ 26; *Jackson v. Michael Reese Hospital & Medical Center*, 294 Ill. App. 3d 1, 10 (1997).

The Illinois Supreme Court has articulated a two-prong test to determine whether a defendant has a duty to preserve evidence. *Dardeen v. Keuhling*, 213 Ill.2d 329, 290 Ill.Dec. 176, 821 N.E.2d 227, 231 (Ill.2004). First, a duty may arise by agreement, contract, statute, special circumstances, or a defendant's voluntary assumption of a duty by its affirmative conduct. *Id.* If such a duty exists, then the Court must determine if a reasonable person should have foreseen that the evidence was material to a potential civil action ("foreseeability prong"). *Id.* A plaintiff must satisfy both prongs to establish that the defendant owed him a duty. *Id.*

In determining whether a duty to preserve evidence arises from special circumstances, courts generally consider the likelihood of litigation, whether a plaintiff requested that the

8

defendant preserve the evidence, and whether the defendant had possession of the evidence. See *Dardeen*, 290 Ill.Dec. 176, 821 N.E.2d at 232 (finding no special circumstances where the plaintiff never asked the defendant to preserve the evidence, the defendant did not have possession of the evidence, and the defendant was not a potential litigant at the time the evidence was destroyed); *see also*, *Boyd*, 166 Ill. 2d at 195 (Plaintiff's complaint adequately plead a duty by defendant insurance company because when insurance company took property said to have resulted in a fire, insurance company assumed a duty to preserve evidence).

The FTCA only waives sovereign immunity where "the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); see also 28 U.S.C. § 2674 ("The United States shall be liable... in the same manner and to the same extent as a private individual under like circumstances). "This requirement means the court must find a parallel to [the plaintiff's] claims under Illinois law." *Mayorov v. United States*, 84 F. Supp. 3d 678, 697 (N.D. Ill. 2015) (citing *United States v. Olson*, 546 U.S. 43, 44 (2005)). Thus, an alleged violation of a federal statute or agency directive can only form the basis for an FTCA claim if the state law imposes a similar obligation upon private persons. *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001) ("[T]he FTCA was not intended as a mechanism for enforcing federal statutory duties."); *Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir. 1995) (en banc) (FTCA does not apply where the alleged negligence "arises out of the failure of the United States to carry out a [federal] statutory duty"); *Klett v. Pim*, 965 F.2d 587, 589 (8th Cir. 1992) ("The violation of a federal statute or administrative regulation by an agency of the United States does not, standing alone, create a cause of action under the FTCA. [F]ederally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons.")

9

The loss suffered in spoliation cases is the party's interest in the ability to bring or defend against a lawsuit. Plaintiffs in a spoliation suit claim injury to their legal expectancy interests based on the impairment of their ability to litigate. Plaintiff alleges that his spoliation claim relates to the *Bivens* action alleged in Count 1. (Doc. 39, ¶ 71). As discussed above, the *Bivens* action fails because Plaintiff has not succeeded in getting the DHO's findings reversed.

If the Court find it necessary to further examine the spoliation claim, Plaintiff cannot establish a duty to preserve video tapes. Plaintiff asserts that the duty to preserve evidence derives from Program Statement 5270.89[5]. Program Statement 5270.89 pertains to the Inmate Disciplinary Program and states as follows on page 19 regarding the duties of the investigator:

> If practicable, the inmate's statements offering a rationale for his/her conduct or for the charges against him/her should be investigated. If the inmate requests exculpatory evidence, such as video or audio surveillance, the investigator must make every effort to review and preserve the evidence. It would also be prudent for the investigator to review and preserve the video or audio surveillance even if the inmate does not make a specific request as such evidence is relevant to the incident.

Nothing in this Program Statement speaks to any scenario other than prison disciplinary proceedings, which can result in a loss of good time credits. The Program Statement does not create a policy on the retention or production of surveillance video that is requested in connection with administrative claims or *Bivens* litigation against its employees in their personal capacities. As stated above, the FTCA does not apply where the alleged negligence arises out of the failure of the United States to carry out a federal statutory duty.

The limited scope of the FTCA presents another barrier to the spoliation claim. The FTCA is only a limited waiver of the sovereign immunity of the United States. See *United States v. Mitchell*, 445 U.S. 533, 539 (1980). That limited waiver does not extend to claims against the

---

[5] Available on the BOP website at this link: https://www.bop.gov/policy/progstat/5270_009.pdf.

United States "arising out of ... misrepresentation [or] deceit," which are explicitly excepted from the scope of the FTCA. 28 U.S.C. § 2680(h). This exception precludes claims for negligent and intentional misrepresentation. See *Dorking Genetics v. United States*, 76 F.3d 1261, 1264 (2d Cir.1996); see also *Lipkin v. S.E.C.*, 468 F.Supp.2d 614, 624 (S.D.N.Y.2006) ("To the extent plaintiffs make claims of 'concealment' and spoliation of evidence ... these claims cannot be viewed as sounding in tort (in which case there is no waiver of sovereign immunity for the claims) or they fall within the 'misrepresentation' or 'deceit' exceptions to the FTCA."). Plaintiff's claim regarding the alleged failure to preserve videos is the equivalent of a claim of negligent misrepresentation which should be dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Plaintiff bears the burden of establishing that the court has jurisdiction. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The spoliation claim should be dismissed.

### SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(a). The movant may support the motion by citing to materials in the record, including the depositions, affidavits, and other documents. Fed. R. Civ. P. 56(c)(1); *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010). In assessing whether summary judgment is warranted, the court must construe all evidence, as well as the inferences reasonably drawn therefrom, in the light most favorable to the non-moving party. *Spivey*, 622 F.3d at 822. Any inference drawn must be reasonable, however, and "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014).

The non-moving party, on the other hand, must respond with facts establishing that there remains a genuine issue for trial. *Armato*, 766 F.3d at 719. "The mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. To successfully oppose the motion, the nonmovant must present definite, competent evidence in rebuttal." *Salvadori v. Franklin School Dist.*, 293 F.3d 989, 996 (7th Cir. 2002). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (in order to overcome a properly supported motion for summary judgment, a nonmovant must establish a factual dispute that materially affects the outcome).

## CONCLUSION

Plaintiff's *Bivens* claim against Woolridge necessarily implies the invalidity of the DHO Report and the discipline imposed. No claim for damages under § 1983 can accrue until such time as the result of the disciplinary hearing has been invalidated. *Heck*, 512 U.S. at 486–87, 114 S.Ct. at 2372. Summary judgment should be entered in Woolridge's favor on the *Bivens* claim. As to the FTCA spoliation claim, it is derivative from, and falls with, the *Bivens* claim. Plaintiff cannot establish that there was a duty to preserve the tapes, and his spoliation claim is in essence a claim of misrepresentation for which sovereign immunity is not waived. Finally, it would appear proper to dismiss Warden True as no unidentified Doe defendants remain in this case.

Respectfully submitted,

DONALD S. BOYCE
United States Attorney

*s/ Suzanne M. Garrison*
SUZANNE M. GARRISON
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, Illinois  62208-1344
Phone:   (618) 628-3700
Fax:        (618) 622-3810
Email:     suzanne.garrison@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH HOUCK<br>    # 06743-015,              )<br>                                          )<br>              Plaintiff,          )<br>vs.                                   )     Civil No. 16-CV-1268-JPG-SCW<br>                                          )<br>USA, WARDEN TRUE, and      )<br>OFFICER WOOLRIDGE           )<br>                                          )<br>              Defendants.      ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2018, I electronically filed the foregoing

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

with the Clerk of Court using the CM/ECF system, and electronically sent by email to Plaintiff's address: khouck75@gmail.com

and by placing said copy in postpaid envelope by first class mail to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and content in the United States Mail at 331 Salem Place, Fairview Heights, Illinois 62208.

Kenneth Houck, PRO SE
c/o Syracuse Pavilion
701 Erie Blvd. East
Syracuse , NY  13210

                                            *s/ Suzanne M. Garrison*
                                            SUZANNE M. GARRISON
                                            Assistant United States Attorney
                                            United States Attorney's Office
                                            Nine Executive Drive
                                            Fairview Heights, Illinois  62208-1344
                                            Phone:     (618) 628-3700
                                            Fax:         (618) 622-3810
                                            Email:       suzanne.garrison@usdoj.gov